UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LoLETTA HOGAN and
DALLAS DEYAMPERT,

        Plaintiff(s),        CASE NUMBER: 07-12039
                                     HONORABLE VICTORIA A. ROBERTS

v.

WARREN POLICE OFFICER GILL,
et al.,

        Defendant(s).
_____/

## ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment. Defendants' motion was filed on February 19, 2008. Plaintiff LoLetta Hogan's Responsive brief was due by March 18, 2008. *See* Scheduling Order (Phase II), February 11, 2008. To date, however, Plaintiff has not filed a Response. Therefore, the Court will consider Defendants' unopposed motion.

For the reasons set forth below, Defendants' motion is **GRANTED**.

**II. BACKGROUND**

Plaintiffs LoLetta Hogan and Dallas Deyampert filed this action against three police officers for the City of Warren: Arthur Gill, Randy Baird, and Jason Scholz. Plaintiffs allege that Defendants violated state and federal laws when they detained Plaintiffs in January 2007.

1

As a preliminary matter, the Court notes that Defendants bring this motion for summary judgment solely against Hogan, because they assert that the Court dismissed Deyampert from this action due to her failure to appear for deposition or respond to discovery. In fact, however, an order dismissing Deyampert has not entered. On January 23, 2008, the Court entered an Order that Deyampert's claims would be dismissed if she failed to appear for the next noticed deposition. Defendants have not filed a motion requesting enforcement of that Order. Therefore, Deyampert is still a party Plaintiff, and, per Defendants' request, this motion only addresses Hogan's claims.

Because Hogan failed to respond, her allegations are taken from the Complaint. Hogan says one of the Defendants approached her vehicle while she was parked in a handicapped spot in a Wal-Mart parking lot. She has a handicapped parking permit because her son, who was with her at the time, is autistic. Per Hogan, the officer began sniffing around her car, accused her of smoking marijuana, and screamed at her to get out of the car. He placed Hogan in the back of his car, leaving her son alone in her car, while the officer called the K-9 (canine) unit.

Hogan is licensed to carry a concealed weapon and she had a firearm in the car. When she asked the officer to allow her to retrieve the gun since her son was alone, she says he was rude and abrasive. When Hogan's daughter, Plaintiff Deyampert, emerged from the store, the officer advised Deyampert to retrieve Hogan's concealed weapons license from the car. As Deyampert attempted to comply, a second officer allegedly grabbed her hand, told her to move back, handcuffed her, took her to a police car, and asked if she wanted to go to jail. Deyampert alleges the officer then grabbed

2

her coat and, though she was still cuffed, choked her.

Hogan says she was held for four hours and Deyampert remained in handcuffs (presumably for the same amount of time). Hogan says her car was scratched during the K-9 search and the officers impounded it at her expense. Based on Defendants' alleged conduct, Hogan alleges: 1) Defendants' actions deprived her of her Fourth Amendment rights in violation of 42 U.S.C. §1983; 2) assault and battery; 3) false arrest; 4) false imprisonment; and 5) malicious prosecution.

Defendants offer their and Hogan's deposition testimony to refute her claims. Defendant Gill testified that he was in his patrol car leaving the Wal-Mart parking lot when he noticed that Hogan's car was parked in an area marked with blue diagonal lines as a no-parking zone. Gill pulled along side Hogan's car and motioned for her to move. Hogan, who was in the driver's seat, admitted during her deposition that she was not in a parking spot when Gill first approached her, but claims she did not see him motion her to move along.

As soon as she saw him, Gill says Hogan made an abrupt motion to her mouth and took a sip from a can of Pepsi. Gill then exited his vehicle and approached the passenger side of Hogan's car. As he approached, Gill says he smelled marijuana and asked her to roll down the window. Before she complied, Gill says Hogan made a second motion to her mouth and took another drink from the Pepsi can. When she rolled down the window, Gill says he smelled a strong odor of marijuana. When he asked her about the smell, she denied using marijuana. But, in her deposition, Hogan said her cousin was smoking marijuana in her car earlier in the day which could have accounted for the smell.

3

Gill says he asked Hogan to step out of her car, searched the pockets of her jacket, and asked her to lift her shirt so he could see the waistband. During the search, he noticed Hogan chewing. When he asked what she was chewing, he says she opened her mouth to reveal a green-brown leafy substance in her teeth and on her tongue. Gill believed Hogan swallowed marijuana.

Gill says Hogan complied with his request that she go to his patrol car while he conducted a search of her car. She was not handcuffed, and when she asked that her son remain with her, Gill says he escorted the child to the back of the patrol car as well. Gill confirms that Hogan had a valid permit for the handgun he retrieved from her glove box. He denies threatening Hogan.

Gill requested a K-9 unit to search the car. Defendant Baird responded. Baird says he smelled a strong odor of marijuana during his pre-safety check of Hogan's car. And, the K-9 drug sweep was positive for four drug alerts--an indication the dog detected a drug odor--on the driver's seat, the center console, the ashtray, and the air vent. Because they were "extremely strong alerts," Baird concluded the odor was "extremely fresh" and that narcotics likely had just been used in the car. Baird did not, however find any drugs. During the stop and search, he did not have any physical or verbal contact with Hogan.

Defendant Scholz was on routine patrol and stopped to offer assistance when he saw patrol cars in the Wal-Mart lot. He arrived just after Baird. At Gill's request, Scholz inventoried Hogan's car. Scholz says he also smelled marijuana in the car. He did not have physical or verbal contact with Hogan.

After the K-9 search was complete, Deyampert came out of Wal-Mart. Gill says

she began yelling and screaming in protest.  Eventually, Gill says he took Deyampert by the arm, escorted her to his patrol car, and advised her that she would be arrested for disorderly conduct if she did not stop.  Gill says Deyampert then calmed down.  He denies choking or grabbing Deyampert or that she was handcuffed.  Gill allowed her to remove items from the car before it was impounded and she made several calls from a cell phone.  Baird and Scholz say they did not have contact with Deyampert.

One of Deyampert's calls was to Hogan's husband, Curtis Hogan.  Mr. Hogan arrived and Defendants say he immediately began yelling and expressing opposition to impoundment of Hogan's car and confiscation of her weapon.  At Mr. Hogan's request, Gill summoned a supervisor.  Sergeant Seawack arrived and spoke with Mr. Hogan.  Sometime thereafter, Hogan and Deyampert were released.  Neither was charged with any crime.  But, the car was impounded and the weapon was confiscated.

Defendants contend that Hogan's state law claims fail on the merits and that they are entitled to qualified immunity on her federal claim.

## III.    STANDARD OF REVIEW

Defendants' Motion for Summary Judgment is filed pursuant to Fed. R. Civ. P. 56.  Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  *Kochins v Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986).

5

The movant has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252. If the nonmoving party does not respond with facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989).

Plaintiff failed to file a response to Defendants' Motion for Summary Judgment. Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). The moving party must always bear the initial burden of demonstrating the absence of a genuine issue of material fact, even if the party fails to respond. *Id* at 454-455. "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Id* at 455. *Accord Stough v Mayville Community Schools*, 138 F.3d 612 (6th Cir. 1998).

## IV. APPLICABLE LAW AND ANALYSIS

### A. 42 U.S.C. §1983

42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation,

6

> custom, or usage, of any State . . . subjects, or causes to be
> subjected, any citizen . . . the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

"To state a cause of action under §1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." *Spadafore v Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). It is undisputed that Defendants acted under color of state law, and Plaintiff alleges they deprived her of her Fourth Amendment rights. But, Defendants deny any constitutional violation and assert they are entitled to qualified immunity in any event.

Where the defense of qualified immunity is raised, the Court must first determine whether a constitutional violation has been established. *See Saucier v Katz*, 533 U.S. 194, 201 (2001). The Court finds that it has not. Presumably, Hogan contends Defendants' lacked probable cause to detain her and search her car. But, there is no support for either claim.

It is settled that an officer who makes an investigatory stop does not violate the Fourth Amendment when he has probable cause to believe an individual committed a traffic violation, including a parking violation. *See United States v Graham*, 483 F.3d 431 (6th Cir. 2007). Gill testified that he observed Hogan illegally parked and he approached her car after she failed to move it when he directed her to do so. Since there is no evidence which contradicts Gill's contention that Hogan was illegally parked, there was probable cause for Gill's initial investigation of her.

There was also reasonable suspicion for Gill's subsequent detention of Hogan and probable cause for the search of her car. "Police may briefly stop an individual for

7

investigation if they have a 'reasonable suspicion' that the individual has committed a crime." *Houston v Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999). To establish a reasonable suspicion, an officer must be able to articulate specific facts which, "taken together with rational inferences from those facts, reasonably warrant' an investigatory stop." *Id* (*quoting Terry v Ohio,* 392 U.S. 1, 21(1968)). But, the threshold of evidence required for so-called *Terry* stops is not onerous. That is, "reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). Gill testified that he smelled marijuana as he approached Hogan's car and that the smell intensified after she rolled down the window. He also saw Hogan make an abrupt gesture to her mouth when he first pulled up to her car and again when he approached on foot. These undisputed facts establish that Gill had a reasonable suspicion which justified his brief detention of Hogan for investigation of possible criminal activity.

Finally, with respect to the search of Hogan's car, it is settled that an officer has probable cause to search a vehicle without a warrant if he detects the odor of marijuana emanating from the vehicle. *See United States v Foster*, 376 F.3d 577, 588 (6th Cir. 2004)("[W]hen the officers detected the smell of marijuana coming from Foster's vehicle, this provided them with probable cause to search the vehicle without a search warrant."). Gill, Baird, and Scholz testified to the strong odor of marijuana in and around

8

Hogan's car. In her deposition, Hogan denied smoking marijuana, but admitted there may have been an odor of the drug inside her car because her cousin allegedly smoked marijuana in it earlier. Defendants and Hogan's testimony establish that Defendants had probable cause to search Hogan's car without a warrant.

Because the unrefuted evidence indicates Defendants had probable cause for both the initial stop and subsequent search and a reasonable suspicion to detain Hogan, Plaintiff failed to establish *prima facie* that Defendants violated her Fourth Amendment rights. It is, therefore, not necessary for the Court to reach the question of qualified immunity; without an underlying constitutional violation to support a §1983 claim, the question of qualified immunity is moot. *Adams v City of Auburn Hills,* 336 F.3d 515, 520 (6th Cir. 2003). Defendants' motion for summary judgment on this claim is granted.

### B. Assault and Battery

"An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991); *Smith v Tolberg*, 231 Mich. App. 256, 260 (1998). "A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*

There is no support for Hogan's claim of assault and battery against Baird and Scholz inasmuch as their undisputed testimony is that they did not have any physical or verbal contact with her during the encounter. There is also no evidence to refute Gill's

9

claim that he never threatened to use force against Hogan and that his physical contact was limited to a pat down search for weapons. Defendants' motion on this claim is granted.

### C. False Arrest and Imprisonment

"The crucial element in an action for false arrest or false imprisonment is not that the arrest or detention was unlawful[,]" but "whether the defendant had legal justification to arrest or detain the plaintiff." *Lewis v Farmer Jack Div., Inc*, 415 Mich. 212, 233 (1982). The Court already found that there was legal justification, *i.e.,* reasonable suspicion, for Gill's decision to detain Hogan while he investigated possible criminal activity.

Defendants' motion on this claim is granted.

### D. Malicious Prosecution

There is no basis for Hogan's claim of malicious prosecution. One of the elements she must prove to sustain such a claim is "that the defendant . . . initiated a criminal prosecution" against her. *Matthews v Blue Cross & Blue Shield,* 456 Mich. 365, 378 (1998). However, no charges were ever filed against Hogan.

Defendants' motion on this claim is granted.

## III. CONCLUSION

Defendants' Motion for Summary Judgment on the claims brought by Plaintiff Hogan is **GRANTED** in its entirety.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: May 13, 2008

| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 13, 2008.<br><br>s/Carol A. Pinegar<br>Deputy Clerk |
|---|